IN THE MATTER OF: The Petition of ALAMANCE MEMORIAL PARK, INC. for Judicial Review of the Decision of the Tax Review Board Concerning an Assessment of Intangibles Taxes for the Years 1968 through 1970

No. 7810SC384

(Filed 15 May 1979)

**Taxation § 32— notes receivable of cemetery corporation—valuation for intangibles taxes**

The Secretary of Revenue properly refused to allow a cemetery corporation to deduct reserves for pre-need markers, contributions to perpetual care funds and commissions payable to salesmen in determining the value of its notes receivable for intangibles tax purposes, and the Secretary properly allowed the cemetery corporation to determine the actual value of its notes by using a reduction formula based on the ages of the notes.

APPEAL by petitioner from *Clark, Judge.* Judgment entered 20 February 1978 in Superior Court, WAKE County. Heard in the Court of Appeals 2 February 1979.

Petitioner sells cemetery plots, markers, and crypts on a pre-need basis. Generally, such sales are financed by petitioner through the acceptance of its vendees' notes or contracts of sale accompanied by small down payments. The Secretary of Revenue (hereinafter referred to as the Secretary) disallowed certain deductions made by petitioner in establishing the "actual value" of its notes and contracts receivable. Specifically, the Secretary refused to permit petitioner to deduct monies allegedly required by G.S., Chap. 65 to be placed in its perpetual care funds, reserves maintained by petitioner in respect to its sales of pre-need markers and vaults, and the amount of commissions petitioner may pay its employees in respect to the sales of plots and markers from which such notes may arise. The Secretary refused to allow petitioner to deduct a flat 25% from the value of such notes in order to reflect possible cancellations of the notes. The Secretary allowed petitioner to determine the actual value of its notes by using a reduction formula based on the ages of the notes.

Petitioner filed its petition with the Tax Review Board requesting administrative review of the final decision rendered by the Secretary under date of 15 October 1973 pursuant to G.S. 105-241.2(1). The Tax Review Board affirmed the decision of the

Secretary on 9 December 1974. Pursuant to G.S. 143-309 and 143-310 (since repealed by 1973 N.C. Session Laws, Chap. 1331, effective 1 February 1976), petitioner filed its petition for judicial review on 28 March 1975. At the hearing in the Superior Court, Judge Clark affirmed the decision of the Tax Review Board in all respects, and from that judgment, petitioner appealed.

*Attorney General Edmisten, by Assistant Attorney General George W. Boylan, for the North Carolina Department of Revenue.*

*Ridge, Roberson & Richardson, by Paul H. Ridge; Harris, Poe, Cheshire & Leager, by W. C. Harris, Jr., for petitioner appellant.*

ERWIN, Judge.

The question presented by this record for our determination is:

"Did the trial court commit prejudicial error in affirming in its entirety the decision of the Tax Review Board, and ruling that said decision was supported by the record herein, did not prejudice the rights of the petitioner, was neither unconstitutional nor in excess of the board's statutory authority, was neither arbitrary nor capricious, and was not affected by any error of law?"

We find no error in the judgment appealed from and affirm the trial court.

The burden of proof is on a taxpayer to show that an assessment by tax officials was in error. *See Electric Membership Corp. v. Alexander,* 282 N.C. 402, 192 S.E. 2d 811 (1972); 12 Strong's N.C. Index 3d, Taxation, § 38.2, p. 219. The taxpayer must show that the methods used in determining value were illegal and arbitrary and that he was substantially injured by a resulting excessive valuation of his property. *See generally Electric Membership Corp. v. Alexander, supra,* (determination of true value for purposes of *ad valoren* tax). This appellant has failed to do.

The taxes in question were levied pursuant to G.S. 105-202 (as enacted in 1972), which provides in pertinent part:

"All bonds, notes . . . and other evidences of debt however evidenced . . . having a business, commercial or taxable situs in this State . . . shall be subject to annual tax, which is hereby levied, of twenty-five cents (25¢) on every one hundred dollars ($100.00) of the actual value thereof . . . Provided, that from the actual value of such bonds, notes . . . there may be deducted like evidences of debt owed by the taxpayer as of the valuation date . . . The term 'like evidences of debt' deductible under this section shall not include:

(1) Accounts payable;

. . .

(3) Reserves, secondary liabilities or contingent liabilities except upon satisfactory showing that the taxpayer will actually be compelled to pay the debt or liability . . ."

G.S. 105-202 provides for taxation of promissory notes based on their actual value but allows for certain deductions. The statute does not define the term, "actual value," or provide the method for ascertaining the actual value of a promissory note. Pursuant to G.S. 105-262, the Commissioner of Revenue (now called Secretary of Revenue) implemented a regulation setting forth the method of determining the actual value of notes, bonds, and other evidences of debt. Under this regulation, actual value is determined by: (1) the closing price quoted by security exchanges, (2) the last bid price listed for over-the-counter securities, (3) the outstanding or unpaid balance as of the valuation date, or (4) the appraisal value. *See* 1 N.C. State Tax Rep. (CCH) ¶ 28-905. The regulation provides that if appraised value is used, complete information should be furnished explaining the basis of the appraisal. *Id.* Although the Commissioner's regulation interpreting a taxing statute is not controlling, his interpretation is *prima facie* correct and such interpretative regulation will ordinarily be upheld when it is not in conflict with the statute and is within his authority. *Campbell v. Currie, Commissioner of Revenue*, 251 N.C. 329, 111 S.E. 2d 319 (1959); 12 Strong's N.C. Index 3d, Taxation, § 23.1, p. 160.

The actual value of a note, bond, or other evidence of debt is the price estimated in terms of money at which the property would change hands between a willing and financially able buyer

and a willing seller, neither being under any compulsion to buy or to sell. It is synonymous with the "market value," or the "true value." *See* G.S. 105-283 (market value equals true value); *United States v. North Carolina Granite Corporation*, 288 F. 2d 232 (4th Cir. 1961).

The Secretary of Revenue admits that age and cancellation possibilities of each contract are valid factors in the determining of the actual value of the notes and has implemented a formula to consider these possibilities in determining actual value for purposes of G.S. 105-202. Under G.S., Chap. 105, it is his duty to implement such valuation measures. Appellants have not shown that his methods are illegal, arbitrary, or that the appraised value differs excessively. The Secretary's method of valuing the notes is consistent with note valuations for federal estate and gift tax purposes. Treas. Reg. § 20.2031-4, T.D. 6296, 23 F.R. 4529 (1958), and Treas. Reg. § 25.2512-4, T.D. 6334, 23 F.R. 8904 (1958); *see also* 34 Am. Jur. 2d, Federal Taxation, ¶ 8972, p. 952.

Appellant's contentions that reserves for pre-need markers, contributions to perpetual care funds, and commissions payable to salesmen should be deducted from face value to determine the actual value of a note are fallacious. The above-named costs are only necessary incidents of appellant's choosing to do business, and are not factors to be considered in the proper determination of the actual value of a note, bond, or other evidence of debt.

The judgment entered below is

Affirmed.

Judges MARTIN (Robert M.) and MITCHELL concur.